UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.

PHILIP DEBARTOLO

Criminal Case No. 14-cr-0016-WES

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

The Government objects to Defendant Philip DeBartolo's motion.  Defendant,
who has no health condition that exposes him to heightened risk of illness from
COVID-19, fails to sets forth any basis for compassionate release.

I.     **BACKGROUND**

Defendant, under 18 U.S.C. § 3582(c)(1)(A)(i), moves for reduction of his
sentence.  *See* Def.'s Mot.  In the first quarter of 2014, Defendant was arrested and
subsequently indicted on four counts of being a felon in possession of firearms, three
counts of marijuana distribution, and other related gun and drug charges.  *See* Dkt. No.
27 ("PSR") at ¶¶ 1-3.  After having been convicted in 2005 on various felony counts
arising from his participation in a drive-by shooting, in 2013 Defendant in three sepa-
rate transactions sold three firearms to an undercover agent who presented himself as
being a gang member.  *See id.* at ¶¶ 7-11, 23, 28.  Defendant also sold that undercover
agent marijuana on four occasions.  *See id.* at ¶¶ 8, 10, 13, 18, 25.  At the end of the case,
when Defendant's home was searched, agents found nine firearms, ammunition, and
firearms paraphernalia hidden in a storage room and a 31-plant marijuana grow in
another room.  *See id.* at ¶¶ 34-43.  His Guidelines range was 235 to 293 months.  *See
id.*at ¶ 100.  On January 30, 2015, Defendant was sentenced to 120 months of
incarceration.  *See* Dkt. No. 35 (Judgment).

1

To date, Defendant has been in custody for approximately 93 months[1] and has an estimated 16 months remaining.  Approximatley 27 months in Defendant's term.  His project release date from Fort Dix FCI is September 16, 2022.[2]  *See* BOP Inmate Locator at https://www.bop.gov/ inmateloc/ (last visited June 2, 2020).

At Fort Dix, there are presently 19 inmates and 0 staff members who are positive for COVID-19, and 26 inmates and 5 staff members have recovered.  *See* BOP COVID-19 page at https://www.bop.gov /coronavirus/ (last visited June 2, 2020).  There have been no COVID-19 deaths at the prison.  *See id.*  Fort Dix FCI presently houses 2,638 inmates.  *See id.*; *see* https://www.bop.gov/locations /institutions/ftd/ (last visited June 2, 2020).

## II.    <u>ARGUMENT</u>

Under 18 U.S.C. § 3582(c)(1), provided that a defendant has exhausted administrative remedies, a condition present here, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds, as relevant here, both that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A)(i).  The moving defendant bears the burden of establishing that he or she is eligible for a reduction.  *See, e.g., United States v. Jaca-Nazario*, 521 F.3d 50, 57 (1st Cir. 2008); *United States v. Ventura-Cruel*, 133 F. Supp. 2d 138, 142 (D.P.R. 2001); *see also United States v. Miamen*, 2020 WL 1904490, at *2 (D.R.I. Apr. 17, 2020).

A reduction in sentence will be consistent with USSG § 1B1.13, the "applicable policy statement" referenced in § 3582(c)(1)(A)(i), if after considering the § 3553(a)

---

[1]  He was arrested and detained on January 15, 2014.  *See* PSR at 1.

[2]  The release-date calculation appears to incorporate pre-judgment detention and good time.

factors, the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community;" and that (iii) the reduction is otherwise consistent with the policy statement.  USSG § 1B1.13 (citing 18 U.S.C. § 3142(g)).[3]

As elaborated below, Defendant fails to establish extraordinary and compelling reasons, and a reduction would be inconsistent with the applicable policy statement.

### A.      Covid-19, by itself, is not a reason for release.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; *see also United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D.Ca. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").[4]

---

[3] The policy statement refers only to motions filed by the BOP Director.  That is because the statement was last amended on November 1, 2018, and, until the enactment of the First Step Act on December 21, 2018, defendants themselves were not entitled to file motions under 18 U.S.C. § 3582(c).  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012).  In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, USSG § 1B1.13 applies to motions filed by defendants as well.  *See, e.g., United States v. Willingham*, 2019 WL 6733028, at *1-2 (S.D. Ga. Dec. 10, 2019); *United States v. Lynn,* No. CR 89-0072-WS, 2019 WL 3805349, at *2-4 (S.D. Ala. Aug. 13, 2019).  And while some courts do not consider USSG § 1B1.13 to be binding, they have still concluded that it provides the Court with relevant guidance.  *See, e.g., United States v. Ebbers,* --- F. Supp. 3d ---, 2020 WL 91399, at *4-5 (S.D.N.Y. Jan. 8, 2020); *United States v. Rivernider*, No. 3:10-CR-222(RNC), 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019).

[4] *See also, e.g., United States v. Coles*, Case No. 18-cr-20254, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, No. 18-cr-579 (JSR),

Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences in order to deal with a world-wide viral pandemic.

COVID-19 is one factor among others that should be considered and assessed. If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[5] that medical condition may satisfy the standard of "extraordinary and compelling reasons" depending on the evidence presented. Similarly, a defendant's age-related decline in health may make him more susceptible to severe illness if he contracts COVID-19 even where his or her age-related health issues would not otherwise have qualified him or her for release. *See* USSG § 1B1.13, cmt. n.1(A)(ii)(III).[6] As part of its analysis of the totality of circumstances, however, courts should also consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated.

---

2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors).

[5] *See* CDC website, *At Risk for Severe Illness*, at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed May 4, 2020).

[6] The USSC policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *Id.* cmt. n.1(A)(ii).

The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. *Id.* cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." *Id.* cmt. n.1(D).

Here, Defendant has no CDC-recognized factor that heightens his risk of severe illness from COVID-19.

**B.      Defendant, although not of ideal health, does not suffer from any condition that places him at greater risk should he contract COVID-19.**

Defendant's medical records substantiate that he has been diagnosed as having or assessed to have stage three (or "moderate") kidney disease, hypertension that is "well-controlled," anemia that was "resolved," hyperlipidemia with a low "10-year risk of heart disease or stroke," hematuria, and prediabetes.  *See* Medical Records (filed under seal by Defendant) at 8.  Defendant opines that these conditions place him at a greater risk of severe illness from COVID-19.  The Centers for Disease Control and Prevention ("CDC") does not support Defendant's opinion.

According to the CDC, people with the following conditions are at severe risk of illness from COVID-19:

- "asthma (moderate-to-severe),"
- "**chronic kidney disease being treated with dialysis**,"
- " chronic lung disease,"
- "**diabetes**,"
- "hemoglobin disorders,"
- a weakened immune system "(immunocompromised),"
- "liver disease,"
- a "serious heart condition[]," which includes "**pulmonary hypertension**," and
- "severe obesity, defined as a body mass index (BMI) of 40 or above."

*See* CDC website at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (last accessed June 2, 2020) (emphasis added).[7]  Defendant does not, according to his medical records, have any of these conditions.  *See* Medical Records.  There is no indication that his moderate kidney condition is being treated with dialysis.  *See id.*  There is no indication that he

---

[7] People who are 65 or older or who live in nursing homes or long-term care facilities are also at greater risk.

has pulmonary hypertension, a specific type of hypertension.[8] He has been assessed as having prediabetes, a heightened risk of diabetes at some point in the future.[9] He has not been found to have diabetes. None of the other conditions cited in his motion are recognized by the CDC as creating heightened risk. Defendant has not established that he has a heighten risk of severe illness from COVID-19.

Furthermore, Defendant's own characterization of conditions at Fort Dix suggests that nothing prevents him from practicing appropriate social distancing. The prison appears to have reduced population such that he and four others are in a unit that normally houses twelve. *See* D.'s Mot. at 4. Indeed, Fort Dix is overall only at 52% of capacity.[10] Furthermore, the spread of COVID-19 at Fort Dix is limited, and cannot be characterized as an outbreak or uncontrolled contagion. It appears that the prison's mitigation and containment efforts have kept infection rates low.

The reasons the Court earlier found for issuing a 120-month term of incarceration remain unchanged. In these COVID-19 times, Defendant's health condition, although not optimal, does not create an extraordinary or compelling reason for early release.

---

[8] "Pulmonary hypertension is a type of high blood pressure that affects the arteries in your lungs and the right side of your heart." *See* Mayo Clinic website at https://www.mayoclinic.org/diseases-conditions/pulmonary-hypertension/symptoms-causes/syc-20350697 (last accessed June 2, 2020). "The term pulmonary hypertension refers to high blood pressure in the lungs. While in regular hypertension (also known as high blood pressure), the arteries throughout the body are constricted, PH primarily affects the blood vessels in the lungs, making the right side of the heart work harder." *See* Pulmonary Hypertension Association website at https://phassociation.org/patients/aboutph/types-of-ph/#:~:text=The%20term%20 pulmonary%20hypertension%20refers,of%20the%20heart%20work%20harder. (last accessed June 2, 2020).

[9] *See* Mayo Clinic website at https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-how-to-reverse-prediabetes/ (last accessed June 2, 2020) (describing difference between diabetes and prediabetes and ways for those who have been diagnoses with prediabetes to avoid diabetes).

[10] Defendant specifies that Fort Dix FCI has a capacity to house 5000 inmates. *See* D.'s Mot. at 3. As set forth in the background section above, Fort Dix FCI is presently housing only 2683 inmates.

Defendant has failed to establish grounds for early release.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorney,

AARON L. WEISMAN
United States Attorney

/s/ Milind Shah
MILIND SHAH
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email:  milind.shah@usdoj.gov

## CERTIFICATE OF SERVICE

On this 2nd day of June 2020, I filed the above response using the Court's electronic filing system and thereby made the filing available to Defendant's counsel, Jason Knight, Esquire.

/s/ Milind Shah
MILIND SHAH
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email:  milind.shah@usdoj.gov