```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
     v.                             )
                                    )   Cr. No. 14-016 WES
PHILIP DeBARTOLO,                   )
                                    )
          Defendant.                )
_____ )
```

## AMENDED ORDER

The Court GRANTS Defendant's Motion for Compassionate Release Due to COVID-19 Pandemic, ECF No. 54. Defendant shall be released from the custody of the Bureau of Prisons ("BOP") by Thursday, June 11, 2020, by 5 p.m. Further, as set forth in more detail below, the balance of Defendant's sentence shall be added to his supervised release and spent on home detention.

It is undisputed that, pursuant to 18 U.S.C. § 3582(c), Defendant has exhausted the BOP's administrative process for his request for compassionate release. See Ex. B to Mem. in Supp. of Def.'s Mot. for Compassionate Release ("Def.'s Mem."), ECF No. 54-1. The Government opposes Defendant's Motion. See generally Gov't Resp. to Def.'s Mot. for Compassionate Release, ECF No. 56.

The Court concludes that: (1) extraordinary and compelling reasons warrant the reduction in light of the COVID-19 pandemic, reported COVID-19 within the facility in which Defendant is held

(Fort Dix FCI), and Defendant's preexisting medical conditions (including, but not limited to, stage 3 chronic kidney disease and hypertension); (2) Defendant will not be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. § 3553(a) weigh in favor of release. See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

With respect to Defendant's health, medical records submitted by counsel demonstrate that Defendant has stage 3 chronic kidney disease. See Medical Records 7, ECF No. 57. ■ ■ ■ ■ ■ ■ ■ ■ According to the Centers for Disease Control and Prevention ("CDC"), chronic kidney disease treated with dialysis increases a COVID-19 patient's risk of adverse outcomes.[1] ■ ■ ■ ■ The medical

---

[1] See Centers for Disease Control and Prevention, People Who Are at Higher Risk, Coronavirus Disease 2019, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 9, 2020) (noting that chronic kidney disease treated with dialysis is a risk factor for poor outcomes with COVID-19). The Government argues that the CDC's guidance should be read to suggest that renal disease that is both chronic and advanced, but not yet requiring dialysis is not a risk factor. The Court disagrees for reasons discussed below.

research regarding preexisting medical conditions that may pose increased risk for patients who contract COVID-19 is rapidly evolving. Several recent studies of outcomes in COVID-19 patients suggest chronic kidney disease increases risk of mortality, when compared to those without the risk factor.[2]

Defendant also has documented hypertension. Id. at 7. The CDC does not yet list hypertension as an increased risk factor for severe COVID-19 on its website. However, research regarding this risk factor is also emerging and while the picture with respect to hypertension is not yet clear, at least one recent study suggests hypertension increases the relative risk of mortality two-fold for a patient hospitalized with COVID-19, as compared with those without hypertension.[3] Additionally, the

---

[2] See Brandon Michael Henry, et al., Chronic Kidney Disease is Associated with Severe Coronavirus Disease 2019 (COVID-19) Infection, 52 Int'l Urology & Nephrology 1193, 1193 (Mar. 28, 2020), https://link.springer.com/article/10.1007/s11255-020-02451-9 ("Based on a contrite meta-analysis of early and preliminarily available data, [chronic kidney disease] seems to be associated with enhanced risk of severe COVID-19 infection. Patients with [chronic kidney disease] should hence be advised to take extra precaution to minimize risk exposure to the virus."); see also Yichun Cheng, et al., Kidney Disease is Associated with In-Hospital Death of Patients with COVID-19, 97 Kidney Int'l 829-38 (Mar. 20, 2020), https://www.kidney-international.org/article/S0085-2538(20)30255-6/pdf.

[3] Chao Gao, et al., Association of Hypertension and Antihypertensive Treatment with COVID-19 Mortality: A Retrospective Observational Study, 41 European Heart J. 2058-66,

Court concludes the comorbidity of these conditions would place Defendant at significantly higher risk for a poor outcome if he were to contract the COVID-19 virus. For these reasons, the Court concludes that Defendant's risk of death or serious adverse consequences from COVID-19 is substantially higher than the general population.

In addition to Defendant-specific risk factors, COVID-19 is reported at FCI Fort Dix. The Government represented to the Court that all inmates at the Fort Dix satellite camp were tested on May 6th. Of the 240 inmates, 58 tested positive for COVID-19, for an infection rate of over 20%. Defendant is

---

(June 4, 2020), https://academic.oup.com/eurheartj/article/41/22/2058/5851436 (last visited June 9, 2020) (noting that hospitalized patients' risk of death increased from 1.1% to 4.0% where they suffered from hypertension; when adjusted for confounding factors, a two-fold increase in mortality).

Following the hearing on this matter, the Government submitted an affidavit from Dr. Kenneth Scissors filed in May 2020 in a case in the District of Colorado. See Decl. of Kenneth Scissors, M.D., Aguayo v. Martinez, Civil Action No. 20-cv-00825-DDD, ECF No. 37-1 (May 7, 2020). Citing a different study, Dr. Scissors contends there is no proven connection between hypertension and adverse COVID-19 outcomes. See id. ¶ 2 (citing Ernesto Schiffrin, et al., Hypertension and COVID-19, Am. J. Hypertension (Apr. 6, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7184512/). It appears to the Court that the medical research regarding hypertension is evolving and not yet fully developed; and while the Court cannot say with absolute certainty that hypertension (whether controlled with medication or not controlled) is a serious aggravating factor, it seems probable that it is, and in any event, likely makes the risk associated with Defendant's chronic kidney disease worse.

housed at the low security facility, where the BOP has tested very few inmates. While no general population inmates have tested positive at the low security facility[4], the BOP has also not performed widespread testing that would allow the Court to determine the actual infection rate. However, based upon the rate of infection at the camp and within the greater community, it is likely to be notable.

As to the additional § 3553 factors and risk to the community, the Court finds that although Defendant's offense and criminal history are serious and concerning, he has served approximately 80% of his sentence; he has been mostly discipline free; he would be eligible for placement in a halfway house in a little over one year; and he is older. Thus, the goals of deterrence have been served, and an additional year of incarceration would do little to further protect the public. The sentencing factors now favor release.

Post-release, the Court modifies Defendant's conditions of supervised release to provide that:

1. Defendant shall self-quarantine for fourteen (14) days upon release.

---

[4] The inmates who tested positive in the camp were transferred to the isolation area which is housed in a portion of the low security facility. The isolation area is reported to be cordoned off from the rest of the low security facility.

2. Defendant shall serve his supervised release under home detention with GPS until September 16, 2022, with location monitoring to be added at a time that is safe and practicable as determined by U.S. Probation. The following exceptions to home detention apply: employment, education, religious services, medical treatment, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, and other activities as pre-approved by U.S. Probation.

In addition to the above modifications, Defendant's term of supervised release shall be extended to June 11, 2026.

IT IS SO ORDERED.

*[signature]*

William E. Smith
District Judge
Date: June 10, 2020